THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO. 06-61538-CIV-SEITZ/MCALILEY

LOUIS VUITTON MALLETIER, S.A.
a foreign business entity,

        Plaintiff,

vs.

TODD G. THURKETTLE, *et al*.,

        Defendants.

_____ /

### PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT THEREOF

Plaintiff, Louis Vuitton Malletier, S.A., a foreign business entity ("Louis Vuitton"), pursuant to Rule 56 of the Federal Rules of Civil Procedure, hereby files its Motion for Partial Summary Judgment against Todd G. Thurkettle and Doreen C. Thurkettle, individually and jointly, d/b/a LVSecret.com d/b/a Ehandbagz.com (collectively the "Thurkettles" or "Defendants") on the issue of liability as to Counts I, II, III, IV, VI, VII, and VIII of the Complaint. In support of its Motion, Louis Vuitton states as follows:

### <u>MEMORANDUM OF LAW</u>

## I.    INTRODUCTION

Louis Vuitton is suing the Defendants for federal trademark infringement and counterfeiting (Court I), false designation of origin (Count II), trademark dilution (Count III), copyright infringement (Count IV), patent infringement (Count V)[1], cyperpiracy under §43(d) of the Lanham Act (15 U.S.C. §1125(d) (Count VI), common law trademark infringement (Count VII), and common law unfair competition (Count VIII). (D.E. 1) This suit arises out of the Defendants' fraudulent promotion, advertisement, distribution and sale of counterfeit goods, handbags, wallets, watches, shirts, umbrellas, and hats (the "Defendants' Goods"), bearing spurious marks which are identical copies of Louis Vuitton's federally registered and common

---

[1] At this time, Louis Vuitton is not moving for Summary Judgment on its patent infringement claim.

law trademarks as identified in Paragraph 7 of Louis Vuitton's Complaint (the "Louis Vuitton Marks"). *Id.* Additionally, some of the Defendant's Goods infringe upon Louis Vuitton's U.S. Copyright Registrations (the "Louis Vuitton Copyrights") identified in Paragraph 7 of Louis Vuitton's Complaint. *Id.* The Defendants were intentionally falsely representing to the public and the trade that Defendants' Goods were authentic products authorized for sale by Louis Vuitton. In reality, the undisputed facts demonstrate that Defendants' Goods are worthless counterfeit items.

## II.    STANDARD OF ADJUDICATION

The standard to be applied in reviewing summary judgment motions is stated unambiguously in Rule 56(c) of the Federal Rules of Civil Procedure:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56 (c). The United States Supreme Court has provided significant guidance as to the evidentiary standard which trial courts should apply in ruling on a motion for summary judgment:

> [The summary judgment] standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Brady v. Southern R. Co.,* 32 U.S. 476, 479-80, 64 S.Ct. 232, 234, 88 L.Ed. 239 (1943).

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The Court in *Anderson* further stated that "[t]he mere existence of a scintilla of evidence in support of the position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Id.* at 252. In determining whether this evidentiary threshold has been met, the trial courts "must review the evidence presented through the prism of substantive evidentiary burden" applicable to the particular cause of action before it. *Id.* at 254. If the non-movant in a summary judgment action fails to adduce evidence which would be sufficient, when viewed in a light most favorable to the non-movant, to support a jury finding for the non-movant, summary judgment must be granted. *Id.* at 254-55.

Summary Judgment may be granted in cases involving violations of the Lanham Act. *Varitronics Sys., Inc. v. Merlin Equip., Inc.*, 682 F. Supp. 1203 (S.D. Fla. 1988). In the instant matter, summary judgment against the Defendants is appropriate because, as will be demonstrated below, the undisputed factual evidence wholly supports Louis Vuitton's allegations in Counts I, II, IV, VI, VII and VIII of Louis Vuitton's Complaint and the Defendants have no defenses as a matter of law.

## III.   EVIDENCE OF DEFENDANTS' INFRINGING ACTIVITIES

Louis Vuitton's evidence demonstrates the Defendants are engaged in the fraudulent promotion, advertisement, distribution, and sale of counterfeit Louis Vuitton goods. That Defendants sold counterfeit Louis Vuitton goods was confirmed by Louis Vuitton's investigation of the Defendants, and the Defendants own admissions.

### A.   Investigative Evidence.

In or about December, 2004, as part of its ongoing investigations regarding the sale of counterfeit Louis Vuitton products, Louis Vuitton retained Joel Voyles of Investigation Services Company to investigate the suspected sale of counterfeit products by the Defendants via their Internet website LVSecret.com. (Livadkin Decl. ¶ 11 attached as Ex. A to Plaintiff's Statement of Undisputed Facts; Klug Decl. ¶ 5 attached as Ex. D to Plaintiff's Statement of Undisputed Facts; Voyles Decl. ¶ 3 attached as Ex. E to Plaintiff's Statement of Undisputed Facts.)[2] On or about December 28, 2004, Investigator Voyles accessed the fully interactive Internet website operating under the domain name LVSecret.com and placed an order for the purchase of a hat bearing various Louis Vuitton Marks at issue in this action for $64.99, including shipping. (Voyles Decl. ¶¶ 6-7.) Payment was made via credit card and the payee was identified as "LVSECRET 985-634-0535 LA." (Voyles Decl. ¶ 7.) On January 7, 2005, Investigator Voyles received the hat purchased from the Defendants via their Internet website LVSecret.com. (Voyles Decl. ¶ 6 and Comp. Ex. 1 attached thereto.) The hat bearing several of the Louis Vuitton Marks purchased by Investigator Voyles from LVSecret.com was turned over to representatives of Louis Vuitton for evaluation and was determined to be non-genuine. (Livadkin Decl. ¶¶ 13-14; Klug Decl. ¶ 8; Voyles Decl. ¶ 9.)

---

[2] Exhibits are attached to and referenced in Plaintiff's Statement of Undisputed Facts and are incorporated by reference herein.

In or about April, 2005, Louis Vuitton retained Robert Holmes of IPCyberCrime.com, LLC formerly the Holmes Detective Agency, to investigate the suspected sale of counterfeit products by the Defendants via their Internet website Ehandbagz.com.  (Livadkin Decl. ¶ 16; Klug Decl. ¶ 10; Holmes Decl. ¶ 3 attached as Ex. F to Plaintiff's Statement of Undisputed Facts.)  On or about April 15, 2005, Investigator Holmes accessed the fully interactive Internet website operating under the domain name Ehandbagz.com and placed an order for the purchase of a wallet bearing several of the Louis Vuitton Marks at issue in this action for $141.70, including shipping.  (Holmes Decl. ¶¶ 5-6.)  Payment was made via debit/credit card and the payee was identified as "EHANDBAGZ.COM 877-8630559 LA US."  (Holmes Decl. ¶ 6.)  The wallet purchased from Ehandbagz.com was shipped directly to Investigator Holmes' address located in Fort Lauderdale, Florida, and then forwarded, unopened, to his office, located at that time in Beverly Hills, California.  (Holmes Decl. ¶ 7.)  On May 5, 2005 Investigator Holmes received the wallet bearing various Louis Vuitton Marks purchased from Ehandbagz.com. (Holmes Decl. ¶ 7; Comp. Ex. 3 attached thereto.)  The wallet bearing several of the Louis Vuitton Marks purchased by Investigator Holmes from Ehandbagz.com on April 15, 2005 was turned over to representatives of Louis Vuitton, together with a chain of custody, for evaluation and was determined to be non-genuine.  (Livadkin Decl. ¶¶ 18-19; Klug Decl. ¶ 18; Holmes Decl. ¶ 8)

On or about November 18, 2005, Investigator Holmes again accessed the Internet website operating under the domain name Ehandbagz.com and placed a second order for the purchase of a wallet bearing several of the Louis Vuitton Marks at issue in this action for $141.70, including shipping.  (Holmes Decl. ¶¶ 10-11.)  Payment was made via debit/credit card and the payee was identified as "EHANDBAGZ.COM NEW ORLEANS LA."  (Holmes Decl. ¶ 11.)  On December 9, 2005 Investigator Holmes received the wallet bearing various Louis Vuitton Marks purchased from Ehandbagz.com. (Holmes Decl. ¶ 12; Comp. Ex. 6 attached thereto.)  The wallet bearing various Louis Vuitton Marks purchased by Investigator Holmes from Ehandbagz.com on November 18, 2005 was turned over to representatives of Louis Vuitton, together with a chain of custody, for evaluation and was determined to be non-genuine.  (Holmes Decl. ¶ 13; Livadkin Decl. ¶¶ 21-22; Klug Decl. ¶ 17.)

As part of their investigation of the Defendants, Louis Vuitton's private investigators also conducted "whois" and domain name searches on LVSecret.com and Ehandbagz.com in order to

ascertain information on the registrants of the each domain name.  (Voyles Decl. ¶ 4; Holmes Decl. ¶¶ 4, 9.)  Louis Vuitton's private investigators found the registered owner information for both domain names listed as "networksolusionsprivateregistration."  (Voyles Decl. ¶ 4 and Ex. 1 attached thereto; Holmes Decl. ¶¶ 4, 9 and Ex. 1 and 4 attached thereto.)  Network Solutions is a domain name registry that offers a private registration service allowing the true owner information to be secreted for a fee.  (Voyles Decl. ¶ 4; Holmes Decl. ¶¶ 4, 9.)

      **B.**      **Evidence Obtained Through Third Party Discovery.**

To verify the Defendants' ownership and operation of the websites using the domain names LVSecret.com and Ehandbagz.com, Subpoena Duces Tecum for records were served upon the registrar for the domain names, Network Solutions, LLC ("Network Solutions), and its subsidiary company, MonsterCommerce, LLC (MonsterCommerce), requesting all documents relating to Doreen C. Thurkettle, Todd G. Thurkettle, LVSecret.com, and EhandBagz.com, among others.  (Ex. L, Gaffigan Decl. ¶¶ 5, 7 and Comp. Ex. 1 and 2 attached thereto.)  On April 17, 2007, Jessica Anthony, the Subpoena Compliance Administrator for Network Solutions, complied with the Subpoena by producing copies of the requested documents within the possession and control of Network Solution.  (Gaffigan Decl. ¶ 6; Ex. M, Anthony Aff. and true and correct copies of the documents produced by Network Solutions in response to Plaintiff's Subpoena.)  On January 18, 2008, Jessica Anthony, the Subpoena Compliance Administrator for Network Solutions, complied with the second Subpoena by producing copies of the requested documents within the possession and control of Network Solution.  (Gaffigan Decl. ¶ 8; Ex. M, Anthony Aff. and true and correct copies of the documents produced by Network Solutions in response to Plaintiff's Subpoena.)  On June 18, 2007, Trip Goodloe, Vice President of Operations for MonsterCommerce, complied with the Subpoena by producing copies of the requested documents within the possession and control of MonsterCommerce.  (Gaffigan Decl. ¶ 10; Ex. N, Goodloe Aff. and true and correct copies of the documents produced by MonsterCommerce in response to Plaintiff's Subpoena.)  The documents produced by Network Solutions and MonsterCommerce identify Defendant Todd Thurkettle, 42534 Jefferson Drive, Hammond, Louisiana 70403, as one of the owners and the individuals responsible for maintaining and operating the Internet websites LVSecret.com and Ehandbagz.com. (Ex. M, Anthony Aff. and true and correct copies of the documents produced by Network Solutions in response to Plaintiff's Subpoena and Comp. Ex. 1 attached thereto; Ex. N, Goodloe Aff. and true

and correct copies of the documents produced by MonsterCommerce in response to Plaintiff's Subpoena.)

        C.    **Defendants' Admissions.**

Louis Vuitton's private investigator, Joel Voyles, placed an undercover call to the phone number 225-294-6683.[3]  During this phone call Investigator Voyles spoke with Defendant Doreen C. Thurkettle, who stated that she and her husband, Defendant Todd Thurkettle, jointly own the website www.lvsecret.com business.  (Voyles Decl. ¶ 10.)

Defendant Todd Thurkettle contacted Plaintiff's counsel, Stephen M. Gaffigan, via telephone on June 27, 2007, and, during the course of the conversation, admitted the Defendants were the sole owners and operators of the Internet website LVSecret.com.  (Gaffigan Decl. ¶ 11.) Mr. Thurkettle also admitted he established the Internet website Ehandbagz.com and identified a father and son business in China as additional owners.  Mr. Thurkettle stated that the Chinese father and son did not have the technical knowledge necessary to operate the website. Accordingly, Mr. Thurkettle was responsible for the operation and maintenance of the operation and maintenance of the website.  (Gaffigan Decl. ¶ 11.)  Mr. Thurkettle explained that the Defendants processed all of the orders for Ehandbagz.com and the father and son team in China dropshipped the merchandise from China.  (Gaffigan Decl. ¶ 11.)  Finally, Mr. Thurkettle stated that the Internet website Ehandbagz.com generated in excess of two million dollars in sales revenue during the 2006 calendar year alone, and that he had access to the complete database of customers which contained data on over 15,000 customers, most of who were in the United States.  (Gaffigan Decl. ¶ 11.)

On January 18, 2008, the Defendants jointly replied to Plaintiff's First Set of Interrogatories and First Request for Production of Documents and admitted to registering the LVSecret.com and Ehandbagz.com website domain names and identified revenues and profits earned by them through the operation of LVSecret.com.  (Ex. P., Defendants' Joint Answers to Plaintiff's First Set of Interrogatories.)

---

[3] The investigation tracing the phone number given on the credit charge payee information, 985-634-5035, to Todd Thurkettle at 42534 Jefferson Court, Hamilton Louisiana 70403, also revealed Todd Thurkettle had the landline phone number, 225-294-6683, in his name. (Voyles Decl. ¶ 8)

## IV.   DEFENDANTS' LIABILITY

### A.   Defendants Are Liable for Trademark Infringement and Counterfeiting as a Matter of Law

Title 15 U.S.C. § 1114(1) provides liability for trademark infringement if, without the consent of the registrant, a defendant uses in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark which "is likely to cause confusion, or to cause mistake, or to deceive."  Plaintiff must demonstrate (1) ownership the marks at issue; (2) that the Defendants used the marks without authorization from the Plaintiff; and (3) that the Defendants' use is likely to cause confusion, mistake, or deception as to the source, affiliation, or sponsorship of the Defendants' Goods.  *See Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1178 (11th Cir. 1994); *Dieter v. B&H Indus. of Sw. Florida*, 880 F.2d 322, 326 (11th Cir. 1989), cert. denied, 498 U.S. 950 (1990).  Louis Vuitton's evidence submitted herewith satisfies the three requirements of 15 U.S.C. § 1114.

First, the Louis Vuitton Marks at issue are owned by Louis Vuitton, and the Defendants, as admitted in their Answer, do not have Louis Vuitton's authorization to use the Marks on the Defendants' Goods.  (D.E. 35 ¶ 9, Livadkin Decl. ¶ 10.)  Second, the Defendants have used the Louis Vuitton Marks in commerce by advertising, offering to sell and selling their counterfeit goods at least within this Judicial District via their Internet websites LVSecret.com and Ehandbagz.com.  (Livadkin Decl. ¶ 10; Voyles Decl. ¶ 6; Holmes Decl., ¶¶ 5, 10, and true and correct copies of the relevant pages from the Defendants' websites, LVSecret.com and Ehandbagz.com attached as Composite Exhibits G and H to Plaintiff's Statement of Uncontroverted Facts in Support of Plaintiff's Motion for Partial Summary Judgment; Ex. P., Defendants' Joint Answers to Plaintiff's First Set of Interrogatories.)

The issue in trademark infringement is always whether the activities of the Defendants will result in a likelihood of confusion in the marketplace.  *See Ross Bicycles, Inc. v. Cycles USA, Inc.*, 765 F.2d 1502, 1506 (11th Cir. 1985); *HPD, Inc. v. Marine Holdings, Inc.*, 290 F. Supp. 2d 1320, 1327 (M.D. Fla. 2003) (citing *Davidoff & CIE v. PLD Int'l Corp.*, 263 F.3d 1297, 1301 (11th Cir. 2001.  In *Safeway Store, Inc. v. Safeway Disc. Drugs, Inc.*, 675 F.2d 1160, 1164 (11th Cir. 1982), the Eleventh Circuit set forth the following seven factors to be weighed in a likelihood of confusion analysis in any trademark infringement case; (1) strength of the plaintiff's mark; (2) similarity of the marks; (3) similarity of the goods; (4) similarity of the sales

methods; (5) similarity of advertising methods; (6) defendant's intent; and (7) evidence of actual confusion. *See also Lipscher v. LRP Publ'ns, Inc.,* 266 F.3d 1305, 1303 (11th Cir. 1997).

The seven factors listed above are to be weighed and balanced and no particular factor is dispositive.   As will be demonstrated below, the overwhelming majority of the factors weigh heavily in favor of Louis Vuitton, as a matter of law.

### 1.       Strength of Plaintiff's Mark.

The spectrum of protectability and strength for trademarks is divided into four primary types of designations:  (1) coined, fanciful or arbitrary; (2) suggestive; (3) descriptive; and (4) generic.  *See Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 112 S. Ct. 2753, 120 L.Ed.2d 615 (1992).  Arbitrary or fanciful marks are the strongest.  Moreover, arbitrary/fanciful and suggestive marks are deemed inherently distinctive and entitled to protection.  *Id.*  A trademark's strength is determined by viewing the mark in its entirety as it appears in the marketplace. *Lone Star Steakhouse and Saloon, Inc. v. Longhorn Steaks, Inc.* 106 F.3d 355, 362 (11th Cir. 1997).  It cannot be seriously disputed that the Louis Vuitton Marks are strong, arbitrary and fanciful marks.  (*See* Comp. Ex. B, true and correct copies of the Federal Registrations of the Louis Vuitton Marks.)

The Louis Vuitton Marks are completely arbitrary and, therefore, inherently distinctive. In addition to their inherent strength, the Louis Vuitton Marks have also acquired secondary meaning.[4]  Louis Vuitton has expended substantial time, labor, skill, and expense in developing, advertising, and promoting the Louis Vuitton Marks.  (Livadkin Decl. ¶¶ 7-8.)  The Louis Vuitton Marks enjoy widespread recognition and are each prominent in the minds of the consuming public. (Livadkin Decl. ¶¶ 7-8.)  Indeed, Louis Vuitton products bearing the Louis Vuitton Marks are among the best selling luxury goods in the United States.  (Livadkin Decl. ¶¶ 7-8.)

### 2.       Similarity of the Marks.

"The likelihood of confusion is greater when an infringer uses the exact trademark." *Turner Greenberg Assocs. v. C & C Imps.,* 320 F. Supp. 2d 1317, 1332 (S.D. Fla. 2004); *See also*

---

[4] All but four of the registered Louis Vuitton Marks, Reg. No. 2,773,107; 2,657,903; 2,828,919; and 2,904,197, are incontestable and therefore conclusively presumed to have secondary meaning and to be strong marks. *Dieter v. B & H Indus.*, 880 F.2d 322, 329 (11th Cir. 1989).

Ex. O, Chart Comparing Louis Vuitton's Trademark and Copyright Registrations with the Defendants' Infringing Goods.  The Defendants are using marks which are visually identical to the Louis Vuitton Marks.  (*Compare* Comp. Ex. B with Voyles Decl. and Comp. Ex. 1 attached thereto, Holmes Decl. and Comp. Ex. 3, 6 attached thereto, and Comp. Ex. G and H)  Thus, this factor weighs entirely in favor of Louis Vuitton.

### 3.     Similarity of the Goods.

"The greater the similarity between the products and services, the greater the likelihood of confusion."  *John H. Harland Co. v. Clarke Checks, Inc.,* 711 F.2d 966, 976 (11th Cir. 1983) (citing *Exxon Corp. v. Texas Motor Exch., Inc*., 628 F.2d 500, 505 (5th Cir. 1980)).  The Defendants' Goods are identical to Louis Vuitton's genuine products except that they are different in terms of quality and not backed up by a substantial company such as Louis Vuitton. In view of the foregoing, this factor weighs heavily in favor of Louis Vuitton.

### 4.     Similarity of Sales Method.

The likelihood of confusion is increased when the sales methods of the Plaintiff and the Defendants are identical.  *Turner Greenburg Assocs.,* 320 F. Supp. 2d at 1332.  The Defendants are clearly marketing the Defendants' Goods to the same ultimate retail customer base as Louis Vuitton, using at least one identical retail marketing channel, namely, the Internet.  (Livadkin Decl. ¶¶ 7, 10; Voyles Decl. ¶¶ 5-6; Holmes Decl. ¶¶ 5, 10 and Comp. Ex. G and H)  Thus, this factor weighs in favor of Louis Vuitton.

### 5.     Similarity of Advertising Method.

The Defendants are clearly marketing the Defendants' Goods with at least one identical advertising method as Louis Vuitton, the Internet.  (Livadkin Decl. ¶¶ 7, 10; Voyles Decl, ¶¶ 5-6; Holmes Decl. ¶¶ 5, 10 and Comp. Ex. G and H.)  Although the Defendants may not advertise on the same websites as Louis Vuitton, there is likely some overlap in viewers.  *See Safeway*, 675 F.2d at 1166; *see also*, *Frehling Enters., Inc. v. Int'l Select Group, Inc.*, 192 F.3d 1330, 1339 - 1340 (11th Cir. 1999) ("Identity of periodicals is not required; the standard is whether there is likely to be significant enough overlap in the readership of the publications in which the parties advertise that a possibility of confusion could result"); *Hako-Med USA, Inc. v. Axiom Worldwide, Inc.,* 2006 WL 3755331, *8 (M.D. Fla. 2006) (it is likely that significant overlap of

consumers exists when both parties advertise through their respective websites to similar markets share).  This factor also weighs heavily in favor of Louis Vuitton.

### 6.    Defendants' Intent in Selecting the Marks.

The Louis Vuitton Marks are unique, distinctive, and well known.  As evidenced by the photographs attached to the Voyles and Holmes Declarations, the Defendants have intentionally copied the Louis Vuitton Marks for the purpose of deriving the benefit of Louis Vuitton's world-famous reputation.  In this District, it has been held that when an alleged infringer adopts a mark "with the intent of obtaining benefit from the plaintiff's business reputation, 'this fact alone may be sufficient to justify the inference that there is confusing similarity.'" *Turner Greenberg Assocs.*, 320 F. Supp. 2d at 1333, citing *Carnival Corp. v. Seaescape Casino Cruises, Inc.,* 74 F. Supp. 2d 1261, 1268 (S.D. Fla. 1999); *Rolex Watch U.S.A., Inc. v. Canner*, 645 F. Supp. 484, 492 (S.D. Fla. 1986).  In a case of clear-cut copying such as this, it is appropriate to infer the Defendants intended to benefit from Louis Vuitton's reputation, to the detriment of Louis Vuitton.  *See Playboy Enters., Inc. v. P.K. Sorren Export Co. Inc. of Florida,* 546 F. Supp. 987, 995-996 (S.D. Fla. 1982).

Further evidence of Defendants' intent is found in the disclaimer pages of their websites wherein they acknowledge Louis Vuitton's intellectual property rights and disclaim association. (Comp. Ex. J.)  Other courts have considered the effect of a disclaimer similar to the one used by the Defendants and found the use of a disclaimer to be evidence of bad faith and illustrative of the intent to capitalize on the value and renown of the Plaintiff's Marks.  *See  Rolex Watch USA, Inc. v. Jones*, 2000 WL 1528263, at *3 (S.D.N.Y. Oct. 13, 2000); *see also Chanel, Inc., et al. v. Russell, et al.*, Case No. 06-cv-21829-PAS (S.D. Fla. 2006); *Chanel, Inc. v. Route' Ltd., LLC,* 2006 WL 3842208, at *2 (M.D. Fla. 2006).  In *Rolex Watch USA, Inc. v. Jones*, the Honorable Judge Cote held as follows:

> Moreover, Jones' bad faith is manifest.  Jones' websites show that Jones markets his products as replicas of the Plaintiff's products.  Jones undeniably "adopted [his] mark[s] with the intention of capitalizing on Plaintiff[s]' reputation and goodwill and any confusion between his and the senior user[s] product[s]".  *Lang v. Retirement Living Pub. Co. Inc.,* 949 F.2d 576, 583 (2d Cir. 1981).
>
> Footnote 1 – the fact that Jones' websites contain a disclaimer stating that his products are replicas, and that "[by] purchasing one of these replicas by [sic] agrees not to sell or represent them as genuine," is not evidence of good faith, as

> Jones clearly sought to capitalize on the value and renown of the Plaintiff's
> marks.  It also does not diminish the likelihood of confusion.  Likelihood of
> confusion does not focus solely on the party purchasing a product from the
> defendant; "post-sale confusion as well as point-of-sale confusion [is] actionable
> under the Lanham Act."  *Nabisco, Inc. v. PF Brands, Inc.,* 191 F.3d 208, 218
> (2d Cir. 1999).

*Rolex Watch USA, Inc. v. Jones*, 2000 WL 1528263, at *3 (S.D.N.Y. Oct. 13, 2000).

The Defendants' intent to capitalize on the reputation and goodwill of the Louis Vuitton Marks is also made apparent by the Defendants' continued infringing and counterfeiting activities after receiving a cease and desist letter informing them that their sale and offering for sale merchandise bearing counterfeit Louis Vuitton Marks was illegal and demanding they cease all sales of products bearing counterfeit Louis Vuitton Marks.  (Livadkin Decl. ¶ 15; Macaluso Decl. ¶ 4 and Ex. 1 attached thereto; Eepoel Decl. ¶ 4; Holmes Decl. ¶¶ 5-7, 10-12 and Comp. Ex. 3 and 6, and Comp. Ex. H.)  In fact, the Defendants continued to market and offer for sale goods bearing counterfeits of the Louis Vuitton Marks after being served with the current lawsuit.  (Comp. Ex. O; Ex. R, Anthony Aff. and true and correct copies of the documents produced by Network Solutions on January 18, 2008 in response to Plaintiff's Subpoena.)

The Defendants' continuous promotion and sale of goods bearing counterfeits of the Louis Vuitton Marks after receiving express notice that it was illegal to sell such goods, in combination with the disclaimers on their Internet websites LVSecret.com and Ehandbagz.com acknowledging the goods offered for sale were not genuine Louis Vuitton products is conclusive evidence the Defendants knew the marks were counterfeit and likely to create confusion.  Yet, the Defendants intentionally offered and sold such goods anyway.  Therefore, this factor weighs heavily in favor of Louis Vuitton.

### 7.    Evidence of Actual Confusion.

It should be noted that actual confusion is unnecessary to establish infringement since the test is likelihood of confusion.  *Frehling Enters. v. Int'l Select Group, Inc.,* 192 F.3d 1330, 1340 (11th Cir. 1999).  In this case, however, based upon the evidence presented, it is reasonable to conclude actual confusion exists in the marketplace.

As evidenced by the Declarations filed in support of this Motion, the Defendants offered for sale and sold goods bearing counterfeit marks which are identical in appearance to the

genuine goods sold by Louis Vuitton under the Louis Vuitton Marks.  (*Compare* Comp. Ex. B with Voyles Decl. and Comp. Ex. 1 attached thereto, Holmes Decl. and Comp. Ex. 3, 6 attached thereto, and Comp. Ex. G and H.)  Even though buyers were told of the bogus nature of the Defendants' Goods, other consumers viewing Defendants' Goods in a post-sale setting will be confused, because they will be viewing goods bearing the Louis Vuitton Marks and be under the impression they are viewing genuine goods sold or authorized by Louis Vuitton.  Post-sale consumer confusion is ensured by Defendants' exact copying of the Louis Vuitton Marks.  Such post-sale confusion is entirely actionable.  *Remcraft Lighting Prods., Inc. v. Maxim Lighting, Inc.*, 706 F. Supp. 855, 859 (S.D. Fla. 1989) ("The likelihood of confusion need not occur at wholesale level when the end user will be confused."); *Rolex Watch U.S.A., Inc. v. Forrester*, 2 U.S.P.Q.2d 1292, 1986 WL 15668, at *4 (S.D. Fla. Dec. 9, 1986), ("it is clear that the Court need not find actual confusion on the part of the actual purchasers of [defendant's] products.  The proper test is "likelihood of confusion," and the likely confusion may be on the part of observers,… or second-hand purchasers.").

> As stated in McCarthy on Trademarks:
>
> In 1962, Congress struck out language in the Lanham Act which required confusion, mistake or deception of 'purchasers as to the source of origin of such goods and services.'  Several courts have noted this expansion of the test of infringement and held that it supports a finding of infringement when even non-purchasers are deceived.

McCarthy, Thomas J., *McCarthy on Trademarks and Unfair Competition*, Vol. 3, Sec. 23.7 (West 4th Ed. 2001); *see also, Rolex Watch U.S.A., Inc. v. Canner*, 645 F. Supp. 484, 1 U.S.P.Q.2d 1117 (S.D. Fla. 1986) (confusion and mistake can occur among other persons at a future time, such as viewers of the buyer and recipients of a gift of a counterfeit).  *See also, U.S. v. Hon*,  904 F.2d  803,  14 U.S.P.Q.2d  1959 (2d Cir. 1990), cert. denied,  498 U.S. 1069, (1991) (The "likely to confuse" standard  is not  limited to purchasers and potential purchasers, but includes the  general  public); *accord, Ferrari S.p.A. Esercizio Fabriche Automobili e Corse v. McBurnie*, 11  U.S.P.Q.2d 1843 (S.D. Cal. 1989); *Ferrari S.p.A. Esercizio Fabriche  Automobili e Corse v. Roberts*,  944 F.2d 1235, 20 U.S.P.Q.2d 1001, 1009-1010 (6th Cir. 1991) ("The Lanham Act, however, was intended to do  more than protect consumers at the point of sale.... Ferrari's reputation in the field could be damaged by the marketing of [defendant's] replicas...despite the absence of point of sale confusion").  Hence, this factor also weighs heavily

in favor of Plaintiff.

In view of the foregoing analysis, it is abundantly clear the seven likelihood of confusion factors weigh overwhelmingly in Louis Vuitton's favor and Louis Vuitton has, therefore, proven that Summary Judgment as to Count I of the Complaint is appropriate.

**B.     Defendants' Liability Under Section 43(a) of the Lanham Act, Common Law Unfair Competition, and Common Law Trademark Infringement.**

Louis Vuitton is entitled to judgment on Counts II, VII, and VIII of its Complaint, which set forth causes of action for false designation of origin pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (Count II), common law trademark infringement (Count VII), and common law unfair competition (Count VIII), respectively.

Louis Vuitton has framed its first two Federal claims under Sections 32(1), 15 U.S.C. §1114(1), and 43(a), 15 U.S.C. §1125(a) of the Lanham Act in terms of trademark infringement / counterfeiting and false designation of origin/unfair competition, respectively.  Section 32(1) provides protection only to registered marks, but Section 43(a) affords protection against a wide variety of unfair competition, including infringement of both registered and unregistered marks. *Two Pesos*, 505 U.S. at 767-768.  Indeed, the courts have uniformly held that common law and statutory trademark infringements are merely specific aspects of the broader tort of unfair competition.  *Planetary Motion, Inc. v. Techsplosion, Inc*., 261 F.3d 1188 n.5 (11th Cir. 2001); *see also*, *Dresser Indus., Inc. v. Heraeus Engelhard Vacuum, Inc*., 395 F.2d 457, 461 (3rd Cir. 1968), *cert. denied* 393 U.S. 934, 89 S.Ct. 293, 21 L.Ed.2d 270; *Westward Coach Mfg. Co. v. Ford Motor Co*., 388 F.2d 627, 632 (7th Cir. 1968), *cert. denied* 392 U.S. 927, 88 S.Ct. 286, 20 L.Ed.2d 1386; *Heaton Distrib. Co. v. Union Tank Car Co.*, 387 F.2d 477, 483 (8th Cir. 1967); *New West Corp. v. NYM Co. of California, Inc.*, 595 F.2d 1194 (9th Cir. 1979).

As discussed above, Louis Vuitton has demonstrated the Defendants have committed multiple acts of willful trademark infringement and counterfeiting in violation of Section 32(1) of the Lanham Act.  Louis Vuitton's analysis includes a discussion of all of the likelihood of confusion factors outlined by the Eleventh Circuit in *Safeway Store, Inc. v. Safeway Disc. Drugs, Inc.*  As with trademark infringement claims, the test for liability for false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), is also whether the public is likely to be deceived or confused by the similarity of the marks at issue.  *Two Pesos*, 505 U.S. at 780. Whether the violation is called infringement, unfair competition or false designation of origin,

the test is identical -- is there a "likelihood of confusion?"  *Id.; see also Bonito Boats, Inc.*, 489 U.S. 141, 157 (1989) ("The law of unfair competition has its roots in the common-law tort of deceit:  its general concern is with protecting consumers from confusion as to source."). Additionally, the analysis of the Florida common law claims for unfair competition and trademark infringement is also the same as for federal trademark infringement claims. *Investacorp, Inc. v. Arabian Inv. Banking Corp. (Investcorp) E.C.,* 931 F.2d 1519, 1521 (11th Cir. 1991).

In view of the foregoing authority, Louis Vuitton submits that because it has proven Defendants' liability under Count I of the Complaint for trademark infringement and counterfeiting in violation of Section 32 of the Lanham Act, Louis Vuitton has necessarily proven Defendants' liability under Count II of the Complaint for false designation of origin pursuant to Section 43(a) of the Lanham Act, Count VII of the Complaint for common law trademark infringement, and Count VIII of the Complaint for common law unfair competition. Accordingly, summary judgment is also appropriate as to Counts II, VII, and VIII.

### C.     Defendants are Liable for Copyright Infringement in Violation of 17 U.S.C. § 501(a).

A copyright holder must prove two elements in order to prevail:  (1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original.  *Feist Publ'n, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *Imperial Residential Design, Inc. v. Palms Dev. Group, Inc.* 70 F.3d 96, 99 (11th Cir 1995).  The manufacture, distribution, and/or sale of an unauthorized copy that is substantially similar to a protected work is an infringement of the copyrighted work.  *See* 17 U.S.C. §§ 106 and 501(a); *Sid & Marty Kroft Television Prod., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1162 (9th Cir. 1977); *Shapiro, Bernstein & Co. v. Goody*, 248 F.2d 260 (2d Cir. 1957), cert. denied, 355 U.S. 952 (1958).

Louis Vuitton has submitted true and correct copies of its copyright registration, which serve as prima facie evidence of validity and ownership.  *See S. Bell v. Associated Tel. Directory*, 765 F.2d 801 (11th Cir. 1985).  The Louis Vuitton Copyrights protect works on three dimensional handbags, wallets, watches, shirts, umbrellas, and hats.  (Comp. Ex. C) Accordingly, the only question remaining is whether the Defendants copied Louis Vuitton's protected works.  However, based on the evidence before the Court, the Defendants' copying of Louis Vuitton's registered works is also beyond dispute.  (*Compare* Comp. Ex. C with Comp.

Ex. G and H.)

The Eleventh Circuit has held as follows regarding proof of copyright infringement:

As a factual matter, a proof of copying may be shown either by direct evidence, or, in the absence of direct evidence, it may be inferred from indirect evidence demonstrating that the defendant had access to the copyrighted work and that there are probative similarities between the allegedly infringing work and the copyrighted work.

*MiTek Holdings, Inc. v. Arce Eng'g Co., Inc.,* 89 F.3d 1548 (11th Cir. 1996).   In the instant case, photographs of the Defendants' Goods bear an identical likeness to the designs reflected in the Louis Vuitton Copyrights.  (*Compare* Comp. Ex. C with Comp. Ex. G and H.)  This Court need only find the Defendants' infringing items bear "substantial similarity" to the copyrighted works, duplication or identicalness are not necessary to establish infringement. *Bateman v. Mnemonics, Inc.,* 79 F.3d 1532, 1544 n. 25 (11th Cir. 1996).  Moreover, substantial similarity is not to be determined by the trained eye but by the "ordinary observer." *See Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 829 (11th Cir. 1982) (citations omitted).  Herein, the Defendants' infringing works cannot be distinguished from Louis Vuitton's copyrighted works since the Defendants clearly copied every aspect of Louis Vuitton's copyrighted works. (*Compare* Comp. Ex. C with Comp. Ex. G and H.)

There can be no question the Defendants had access to and copied Louis Vuitton's copyrighted design.  An "overwhelming" inference of access arises when a copy is virtually identical to the copyrighted work.  *Evans v. Wallace Berrie & Co.*, 681 F. Supp. 813, 818 (S.D. Fla. 1988) (citing 3 NIMMER ON COPYRIGHT § 13.02(B), 13-15 and 13-16 n.20.2). *See also, Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1253 -1254 (11th Cir 2007) ("Where a plaintiff cannot demonstrate access he may, nonetheless, establish copying by demonstrating that his original work and the putative infringing work are strikingly similar.")  Since the Defendants' unauthorized product photographs actually bear Louis Vuitton's copyrighted design, an overwhelming inference of access arises which is impossible for the Defendants to dispute.

Alternatively, access may be shown simply by longstanding and wide dissemination of a copyrighted item and its derivation.  *See Selle v. Gibb*, 741 F.2d 896, 901 (7th Cir.1984); *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 722 F.2d 988, 998 (2d Cir.1983); *Midway Mfg. Co. v. Bandai-AmMichaela, Inc.*; 546 F. Supp. 125, 146 (D.C.N.J., 1982) ("Wide publication of a work will suffice to show access."); *R. Dakin & Co. v. Charles Offset Co., Inc.*, 441 F. Supp.

434, 438-39 (S.D.N.Y.1977) (use of copyrighted work in national advertising campaign sufficient to show access);  3 Nimmer s 13.02(A), p. 13-12; *Detective Comics, Inc. v. Bruns Publ'ns, Inc.*, 28 F. Supp. 399, 400 (S.D.N.Y. 1939) (copyrighted publication on market for one year), modified by, 111 F.2d 432 (2d Cir. 1940).  By this test, access is easily established in this case by virtue of the longtime dissemination of Louis Vuitton's copyrighted designs throughout the world.  (Livadkin Decl. ¶  6.)

The existence of "substantial similarity" and access by the Defendants establishes the likeness of Louis Vuitton's copyrighted works depicted in the Defendants' Goods constitutes infringement of Louis Vuitton's copyrighted works.  Once the existence of infringement is established, the Defendants are liable for their activities in distributing, offering for sale, and/or selling the infringing items.  In view of the foregoing analysis, it is abundantly clear that the requisite elements of "substantial similarity," access and the existence of Certificates of Registration for Louis Vuitton's copyrighted works, in combination establish the Defendants are infringing Louis Vuitton's copyrights.  Hence, summary judgment is appropriate as to Count IV.

### D.      Defendants are Liable for Cyberpiracy in Violation of 15 U.S.C. § 1125(d).

Pursuant to the Cyber-piracy prevention provision of the Lanham Act, 15 U.S.C. § 1125(d), a person is liable to the owner of a protected mark for the bad faith intent to profit from the protected mark by using a domain name that is identical or confusingly similar. *PetMed Express, Inc. v. MedPets. Com, Inc.*, 336 F. Supp.2d 1213, 1218 (S.D. Fla. 2004).  To prevail under 15 U.S.C. § 1125(d), the "plaintiff must prove that (1) its mark is distinctive or famous and entitled to protection; (2) the defendant's domain name is identical or confusingly similar to the plaintiff's mark; and (3) the defendant registered or used the domain name with a bad faith intent to profit."  *Bavaro Palace, S.A. v. Vacation Tours, Inc.,* 203 Fed.Appx. 252, 256, 2006 WL 2847233, 3 (11th Cir. 2006).  Louis Vuitton's evidence submitted herewith satisfies the three requirements of 15 U.S.C. § 1125(d).

As discussed in Section IV(A) above, the evidence submitted by Louis Vuitton has established the first two elements of 15 U.S.C. § 1125(d).  First, the Louis Vuitton Marks at issue are distinctive and famous and therefore entitled to protection. (Livadkin Decl. ¶¶ 7-8.)  Second, the Defendants' domain name is identical and confusingly similar to several of the Louis Vuitton Marks.  (Comp. Ex. B.)  "The taking of an identical copy of another's famous and distinctive trademark for use as a domain name creates a presumption of confusion among Internet users as

a matter of law." *Victoria's Cyber Secret Ltd. P'ship v. V Secret Catalogue, Inc.*, 161 F. Supp.2d 1339, 1351 (S.D. Fla. 2001). Moreover, "slight differences between domain names and registered marks, such as the addition of minor or generic words to the disputed domain names are irrelevant." *Id.* The Defendants' domain name LVSecret.com incorporates the "LV" Mark in its entirety and adds the generic term "secret" rendering the domain name nearly identical to the Louis Vuitton Mark. *See Id.*

As to the issue of bad faith, 15 U.S.C. § 1125(d) sets forth a list of nine factors for a court to consider to determine whether a person has used a domain name in bad faith. The nine factors are:

(I)     the trademark or other intellectual property rights of the person, if any, in the domain name;

(II)    the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

(III)   the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

(IV)    the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

(V)     the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

(VI)    the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

(VII)   the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(VIII)  the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

(IX)   the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c)(1) of this section.

The nine factors listed above are not meant to be exclusive and the Court may consider all relevant factors in making a determining of bad faith.  *Victoria's Cyber Secret Ltd. P'ship v. V Secret Catalogue, Inc.*, 161 F. Supp.2d at 1347.

An examination of the bad faith factors compels the conclusion that the Defendants' registration and use of the domain name LVSecret.com violates 15 U.S.C. § 1125(d). Specifically, the Louis Vuitton Marks at issue are owned by Louis Vuitton, and the Defendants have no authorization or right to use the Marks.  (Livadkin Decl. ¶ 10; DE 35, Answer ¶ 61.) The domain name LVSecret.com bears no relation to either of the Defendants names or names otherwise used to identify the Defendants and they have had no prior use of the domain name in connection with the bona fide offering of any goods or services.  Louis Vuitton has used the Louis Vuitton Marks since at least 1932 whereas the Defendants registered the domain name LVSecret.com on April 21, 2004. (Livadkin Decl. ¶ 4; Voyles Decl. ¶ 4.)  Thus, the first three statutory factors weigh in favor of a finding the Defendants registered the domain name with the intent to profit from Louis Vuitton's Marks.

Additionally, as discussed in Section IV(A) above, the Defendants' have clearly intentionally incorporated the Louis Vuitton Mark in their domain name to divert consumers looking for Louis Vuitton's website to their own website for commercial gain.  Such consumers are likely to be confused as to the source and sponsorship of the LVSecret.com website and mistakenly believe the website is endorsed and/or affiliated with Louis Vuitton.  This is especially true in light of the fact the LVSecret.com website was offering for sale counterfeit Louis Vuitton goods.   (Livadkin Decl. ¶ 10; Voyles Decl. ¶¶ 5-7; Comp. Ex. G.)  Clearly, such use is anything but a bona fide noncommercial or fair use of the Louis Vuitton Mark.  In fact, the Defendants' registration of the domain name LVSecret.com in order to sell and offer for sale counterfeit Louis Vuitton goods, knowing the domain name was identical or confusingly similar to Louis Vuitton's indisputably famous and distinctive marks ensured a likelihood of confusion among consumers.  *See* House Judiciary Committee Report on H.R. 3028, H.R. Rep. No. 106-412 p. 13 (October 25, 1999) ("The more distinctive or famous a mark has become, the more likely the owner of that mark is deserving of the relief available under this act.")  Thus, the

fourth, fifth, and ninth statutory factors weigh in favor of a finding the Defendants registered the domain name with the intent to profit from Louis Vuitton's Marks.

In view of the foregoing analysis, the evidence and totality of the circumstances clearly support the finding the Defendants acted with the requisite bad faith intent to profit from the Louis Vuitton Marks.  Hence, summary judgment is appropriate as to Count VI.

## V.      PLAINTIFF IS ENTITLED TO A PERMANENT INJUNCTION

Louis Vuitton requests the Court permanently enjoin the Defendants from using any of the Louis Vuitton Marks and Louis Vuitton Copyrights, and from taking any action that would in any way falsely associate the Defendants with Louis Vuitton and its products or cause confusion as to the source of the Defendants' products.  Congress has made permanent injunctive relief available to prevent the violation of any right of the registrant of a [trademark] or to prevent a violation under section 1125(a).  *See* 15 U.S.C. § 1116(a).  Accordingly, Louis Vuitton is entitled to an injunction if it can demonstrate that such relief is necessary to avoid irreparable harm and it has no adequate remedy at law.  *See Id*.  There is little doubt Louis Vuitton will be irreparably harmed if the Defendants continue their sales of products which infringe on the Louis Vuitton Marks and the works protected by the Louis Vuitton Copyrights.  There is also substantial evidence in the record before the Court that they will in fact do so.  Accordingly, Louis Vuitton's request for injunctive relief should be granted.

The record amply demonstrates the Defendants' sale of Counterfeit Goods, if continued, is likely to cause confusion in the minds of consumers as to the origin of their goods.  The record also demonstrates the Defendants are aware that their conduct is illegal, and that they continued to engage in such conduct after becoming aware of Louis Vuitton's objections to it.  Louis Vuitton contacted the Defendants in writing and advised them to stop selling the Counterfeit Goods.  (Livadkin Decl. ¶ 15; Macaluso Decl. ¶ 4 and Ex. 1 attached thereto; Eepoel Decl. ¶ 4.)  However, after the Defendants became aware of Louis Vuitton' objections, they continued to engage in infringing conduct.  (Holmes Decl. ¶¶ 5, 10; Gaffigan Decl. ¶ 11, Comp. Ex. H.)  These facts alone support an inference the Defendants will continue to infringe on Louis Vuitton's intellectual property rights.

Further, as demonstrated above, a likelihood of confusion exists herein since the Defendants are engaged in counterfeiting activities using spurious designations which are substantially indistinguishable from Louis Vuitton's actual Louis Vuitton Marks.  As the

Eleventh Circuit expressed if: "[A] sufficiently strong showing of likelihood of confusion [caused by trademark infringement] may by itself constitute a showing of … [a] substantial threat of irreparable harm." *Ferrellgas Ptnrs., L.P. v. Barrow*, 143 Fed. Appx., 180, 191 (11th Cir. 2005) (citing *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1310 (11th Cir. 1998) (quoting *E. Remy Martin & Co. v. Shaw- Ross Int'l Imports, Inc.,* 756 F. 2d 1525, 1530 (11th Cir. 1985))). Such a finding of irreparable injury following a showing of likelihood of confusion is virtually always made in a case such as this, where the Plaintiff has demonstrated that it will lose control of its reputation as a result of the Defendants' activities. *Id.* at 90; *see also McDonald's Corp.,* 147 F.3d at 1310 (citing *E. Remy Martin & Co.,* 756 F.2d at 130).

Additionally, many courts have held that a prima facie showing of copyright infringement creates a presumption that the copyright holder has suffered irreparable harm. *See e.g.*, *Concrete Mach. Co. v. Classic Lawn Ornaments*, 843 F.2d 600, 611 (1st Cir. 1988); *Forry, Inc. v. Neundorfer*, 5 U.S.P.Q.2d (BNA), 1510, 1516 (6th Cir. 1986). "In copyright cases . . . if probable success – a prima facie case of copyright infringement – can be shown, the allegations of irreparable injury need not be detailed because such injury can normally be presumed when a copyright is infringed." *Wainwright Sec., Inc. v. Wall Street Transcript Corp.,* 558 F.2d 91, 94 (2d Cir. 1977), *cert. denied*, 434 U.S. 1014 (1978); Melville B. Nimmer and David Nimmer, Nimmer on Copyright § 14.06[A], 14-97 and n.16 (2000). As discussed in Section IV(C) above, Louis Vuitton has made a prima facie showing of copyright infringement.

## VI.     CONCLUSION

In view of the foregoing, Louis Vuitton respectfully requests the instant Motion for Partial Summary Judgment be granted in favor of Louis Vuitton and against the Defendants on Counts I, II, IV, VI, VII, VIII of the Complaint and the Court enter a finding pursuant to 15 U.S.C. § 1117(b) that the Defendants' illegal activities were engaged in intentionally, maliciously, and willfully, and enter a finding pursuant to 15 U.S.C. § 1117(a) that this case is exceptional. Louis Vuitton also requests the Court order the registration for the domain name LVSecret.com be canceled or, at the Plaintiff's election, transferred to Louis Vuitton.

DATED this 18th day of January, 2008.

Respectfully submitted,

**STEPHEN M. GAFFIGAN, P.A.**
Counsel for Louis Vuitton, Inc.,
312 S.E. 17th Street, Second Floor
Fort Lauderdale, Florida 33316
Telephone: (954) 767-4819
Facsimile: (954) 767-4821
E-mail: Stephen@smgpa.net

By: _____/smgaffigan/_____
    STEPHEN M. GAFFIGAN

## <u>CERTIFICATE OF SERVICE</u>

I CERTIFY that on January 18th, 2008 I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify the foregoing document is being served this day on all counsel of record identified below, either via transmission of the Notice of electronic Filing generated by CM/ECF or in some other appropriate manner for those counsel or parties who are not authorized to receive electronically generated Notices of Electronic Filing:

Roger Slade, Esq.
PATHMAN LEWIS, LLP
Counsel for Defendants
One Biscayne Tower
2 South Biscayne Boulevard, Suite 2400
Miami, Florida 33131
Telephone: (305) 379-2425
Facsimile: (305) 379-2420
Email: ras@pathmanlewis.com


_____/smgaffigan/_____
Stephen M. Gaffigan